**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| SMITH AND MORGAN MONEY | : | Case No. 24-60328-lrc |
| MANAGEMENT FIRM, | : | |
| | : | |
| Debtor. | : | |
| | : | |
| U.S. BANK NATIONAL ASSOCIATION, | : | |
| NOT IN ITS INDIVIDUAL CAPACITY | : | |
| BUT AS TRUSTEE OF THE NRZ PASS- | : | CONTESTED MATTER |
| THROUGH TRUST XVI-B, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| SMITH AND MORGAN MONEY | : | |
| MANAGEMENT FIRM, | : | |
| | : | |
| Respondent. | : | |

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that U.S. Bank National Association, not in its individual capacity but as trustee of the NRZ Pass-Through Trust XVI-B has filed a ***Motion for Relief From the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code*** (the "***Motion***") and related papers with the Court seeking an order granting relief from the automatic stay with respect to the premises at 477 Center Hill Ave, Atlanta, GA, 30318.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion at 10:00 a.m. on November 14, 2024, in the Atlanta Division, Courtroom 1204, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-In and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not

303158175v2

have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: October 23, 2024     **TROUTMAN PEPPER HAMILTON SANDERS LLP**

          */s/ Gary W. Marsh*
          Gary W. Marsh (GA ID NO. 471290)
          Pierce E. Rigney (GA ID No. 656946)
          600 Peachtree Street, NE, Suite 3000
          Atlanta, GA 30308
          Telephone: 404.885.3000
          Email: gary.marsh@troutman.com
              pierce.rigney@troutman.com

          *Counsel to U.S. Bank National Association, not in its individual capacity but as trustee of the NRZ Pass-Through Trust XVI-B*

303158175v2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 7 |
|  | : |  |
| SMITH AND MORGAN MONEY | : | Case No. 24-60328-lrc |
| MANAGEMENT FIRM, | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
| U.S. BANK NATIONAL ASSOCIATION, | : |  |
| NOT IN ITS INDIVIDUAL CAPACITY | : | CONTESTED MATTER |
| BUT AS TRUSTEE OF THE NRZ PASS- | : |  |
| THROUGH TRUST XVI-B, | : |  |
|  | : |  |
| Movant, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| SMITH AND MORGAN MONEY | : |  |
| MANAGEMENT FIRM, | : |  |
|  | : |  |
| Debtor. | : |  |

**MOTION OF U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS
INDIVIDUAL CAPACITY BUT AS TRUSTEE OF THE NRZ PASS-THROUGH
TRUST XVI-B, FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT
TO SECTION 362 OF THE BANKRUPTCY CODE**

U.S. Bank National Association, not in its individual capacity but as trustee of the NRZ

Pass-Through Trust XVI-B ("Movant"), by and through its undersigned counsel, brings this

Motion for Relief from the Automatic Stay (the "Motion") pursuant to the provisions of Section

362 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and

respectfully moves the Court for relief from the automatic stay to allow Movant to exercise its

contractual and non-bankruptcy rights against certain real and personal property of the Debtor's

estate.  In support of the Motion, Movant states as follows:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

3.    Venue is proper pursuant to 28 U.S.C. § 1408 and 1409(a).

4.    The statutory basis for the relief requested in this Motion is 11 U.S.C. § 362(d).

## BACKGROUND

5.    Smith and Morgan Money Management Firm, LLC (the "Debtor") executed and delivered to Civic Financial Services, LLC ("Original Grantee") that certain Security Deed, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of January 27, 2023, and originally recorded on February 7, 2023, in Deed Book 66529, Page 372, with the Clerk of Superior Court, Fulton County, Georgia (the "Records"), and re-recorded on March 3, 2023, in Deed Book 66593, page 407 of the Records (said Security Deed, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as the same may have been modified and amended from time to time, being hereinafter referred to as the "Security Deed").

6.    The Security Deed was assigned by Original Grantee to Morgan Stanley Mortgage Capital Holdings LLC ("Second Grantee"), pursuant to that certain  Assignment of Security Deed, dated May 3, 2023, by Original Grantee in favor of Second Grantee and recorded August 22, 2023, in Deed Book 67111, Page 231 of the Records.

7.    The Security Deed was further assigned by Second Grantee to Movant pursuant to that certain Assignment of Security Deed, dated August 11, 2023, by Second Grantee in favor of Movant and recorded July 30, 2024, in Deed Book 68080, Page 318 of the Records.

8.    The Security Deed encumbers certain real property located in Fulton County, Georgia, more particularly described on Exhibit A attached hereto and by this reference made a

2

part hereof (such real property, together with all other property described in and encumbered by the Security Deed that constitutes real property under the laws of the State of Georgia, is hereinafter referred to collectively as the "Real Property").

9.      The Security Deed further encumbers certain personal property (said personal property, being all property described in and encumbered by the Security Deed that is not real property under the laws of the State of Georgia, is hereinafter referred to as the "Personal Property"; and the Real Property and the Personal Property are hereinafter referred to collectively as the "Property").

10.     The Security Deed was given to secure, among other obligations, the payment and performance of any and all indebtedness evidenced by that certain Promissory Note, dated as of January 27, 2023, made by the Debtor payable to the order of Original Grantee in the original principal face amount of TWO HUNDRED EIGHTY THOUSAND DOLLARS ($280,000.00) (as the same may have been assigned, modified and amended from time to time, the "Note" and collectively with all other documents entered into in connection therewith, including the Security Deed, the "Loan Documents"). Capitalized terms used but not defined herein have the meanings assigned to them in the Loan Documents.

11.     Certain defaults and Events of Default have occurred under the Loan Documents. Specifically, the Debtor has failed to pay all amounts owing under the Note on the Maturity Date, and the entire indebtedness evidenced by the Note and secured by the Security Deed is immediately due and payable in full.

12.     In connection with the Events of Default under the Loan Documents, Movant delivered to the Debtor the following notices: (a) that certain Notice of Default, dated as of May 10, 2024; and (b) that certain Notice of Default, dated as of June 4, 2024.

13.     Movant provided notice to the Debtor, in compliance with O.C.G.A. § 44-14-162.2 and § 44-14-162.4, of the initiation of proceedings to exercise a power of sale pursuant to the terms of the Security Deed.  The notice so required was rendered by mailing a copy of the Notice of Sale submitted to the publisher to the "Debtor" (as that term is defined in O.C.G.A. § 44-14-162.1) on August 23, 2024.

14.     Movant, acting according to and in compliance with the terms of the Security Deed, did advertise the Property for sale once a week for four (4) consecutive weeks in a newspaper having general circulation in Fulton County, Georgia, wherein the Sheriff of said county carries his or her advertisements, namely, *The South Fulton Neighbor* (said dates of publication being September 4, 2024, September 11, 2024, September 18, 2024 and September 25, 2024).

15.     On September 30, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code.

16.     Without having knowledge of the Debtor's bankruptcy petition, Movant did conduct a non-judicial foreclosure sale (the "Foreclosure Sale") of the Property on the steps of the Fulton County courthouse at approximately 10 am on October 1, 2024. Movant did credit bid $217,000 for the Property ($200,000 for the Real Property and $17,000 for the Personal Property) was knocked off to Movant (or its assignee) for said sum.

17.     Following the conclusion of the Foreclosure Sale, Movant learned of the Debtor's bankruptcy filing.

18.     Movant did not take any other actions to effectuate the Foreclosure Sale after learning of the Debtor's bankruptcy filing. Specifically, Movant did not record a deed of sale under power to effectuate the Foreclosure Sale and transfer title to the Real Property. Further, Movant did not execute a bill of sale to effectuate and memorialize the sale of the Personal Property.

19.     As of October 1, 2024, the Debtor's outstanding indebtedness under the Loan Documents is $341,885.44. A payoff statement as of October 1, 2024 is attached hereto as Exhibit B.

20.     The Real Property has been appraised (the "Appraisal") at a value of $245,000 as of August 25, 2024. A copy of the appraisal is attached hereto as Exhibit C.

21.     The Debtor failed to maintain insurance on the Property and Movant has forced placed insurance on the Property.

22.     Movant is not aware of any actions that the Debtor has taken to maintain the Property or to protect the value of the Property.

## REQUEST FOR RELIEF

23.     Movant respectfully requests that this Court enter an order substantially in the form of Exhibit D hereto, granting Movant relief from the automatic stay, which order shall: (a) be effective as of September 30, 2024, and shall deem the Foreclosure Sale to be effective without further action by any person, including Movant; (b) permit Movant to record a deed of sale under power effectuating the transfer of title to the Real Property pursuant to the Loan Documents and in accordance with the outcome of the Foreclosure Sale; (c) permit Movant to execute a bill of sale memorializing and effectuating the transfer of the Personal Property to Movant; (d) permit Movant to take all other actions and enter into and/or execute all other agreements, resolutions, certificates or documents, which in each case are necessary to consummate the actions and transactions contemplated by thereby; and (e) granting Movant all such other and further relief as is just and proper.

## ARGUMENT

24.     Pursuant to 11 U.S.C. § 362(d)(2), a bankruptcy court must grant relief from stay with respect to an act against property if: "(a) the debtor does not have an equity in such property; and (b) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

25.     Further, pursuant to 11 U.S.C. § 362(d)(1) relief from stay must be granted "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).

26.     Here, the Debtor has no equity in the Property, and the Debtor does not propose to reorganize. The Appraisal demonstrates that the value of the Property is approximately $245,000. The outstanding debt under the Loan Documents is $341,885.44. The Debtor therefore has no equity in the Property. Moreover, this case does not involve a reorganization, and the Property is therefore not necessary an effective reorganization of the Debtor. This Court must therefore grant Movant relief from stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

27.     Further, the Debtor has not undertaken to protect the value of the Property. The Movant has forced placed insurance on the Property because the Debtor has failed to maintain insurance on the Property. The Property is the Debtor's only asset, and the Debtor has no means by which to protect Movant's security interest in the Property. Therefore, this Court must grant Movant relief from stay pursuant to Section 362(d)(1) of the Bankruptcy Code as well.

## CONCLUSION

WHEREFORE, Movant prays that this Court enter an order substantially in the form of Exhibit D hereto, granting Movant relief from the automatic stay, which order shall: (a) be effective as of September 30, 2024, and shall deem the Foreclosure Sale to be effective without further action by any person, including Movant; (b) permit Movant to record a deed of sale under power effectuating the transfer of title to the Real Property pursuant to the Loan Documents and in accordance with the outcome of the Foreclosure Sale; (c) permit Movant to execute a bill of sale

memorializing and effectuating the transfer of the Personal Property to Movant; (d) permit Movant to take all other actions and enter into and/or execute all other agreements, resolutions, certificates or documents, which in each case are necessary to consummate the actions and transactions contemplated by thereby; and (e) granting Movant all such other and further relief as is just and proper.

Dated: October 23, 2024

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

*/s/ Gary W. Marsh*

Gary W. Marsh (GA ID NO. 471290)
Pierce E. Rigney (GA ID No. 656946)
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3000
Email: gary.marsh@troutman.com
    pierce.rigney@troutman.com

*Counsel to U.S. Bank National Association, not in
its individual capacity but as trustee of the
NRZ Pass-Through Trust XVI-B*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 7 |
|  | : |  |
| SMITH AND MORGAN MONEY | : | Case No. 24-60328-lrc |
| MANAGEMENT FIRM, | : |  |
|  | : |  |
| Debtor. | : |  |

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2024, all ECF participants registered in this case were served electronically with the *Motion for Relief from the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code* (the "Motion") and accompany *Notice of Hearing* through the Court's ECF system at their respective email addresses registered with the Court. I hereby further certify that on October 23, 2024 I have served the parties below with a copy of the foregoing Motion and Notice of Hearing by first-class mail U.S. Mail, with adequate postage prepaid at the addresses stated.

**Smith and Morgan Money Management Firm**
5585 Rosser Rd
Stone Mountain, GA 30087

**S. Gregory Hays**
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

**Office of the United States Trustee**
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Leonard R. Medley, III**
Medley & Associates, LLC
Bldg. 2, Suite 1450
2727 Paces Ferry Road, SE
Atlanta, GA 30339

Dated: October 23, 2024

/s/ Gary W. Marsh
Gary W. Marsh (GA ID NO. 471290)
Pierce E. Rigney (GA ID No. 656946)
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3000
Email: gary.marsh@troutman.com
         pierce.rigney@troutman.com

*Counsel to U.S. Bank National Association, not in
its individual capacity but as trustee of the
NRZ Pass-Through Trust XVI-B*

10

## Exhibit A

### Real Property Description

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT #178 OF THE 14TH DISTRICT, FULTON COUNTY, GEORGIA, AND MORE FULLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE EAST SIDE OF CENTER HILL AVENUE FOUR HUNDRED TWENTY (420) FEET SOUTH AS MEASURED ALONG THE EAST SIDE OF CENTER HILL AVENUE FORM THE SOUTHWEST CORNER OF THE INTERSECTION OF CENTER HILL AVENUE AND BAKER ROAD; RUNNING THENCE SOUTH ALONG THE EAST SIDE OF CENTER HILL AVENUE, SEVENTY- FIVE (75) FEET TO AN IRON PIN; THENCE EASTERLY ONE HUNDRED FORTY-FIVE (145) FEET TO AN IRON PIN; THENCE NORTHERLY SEVENTY FIVE (75) FEET TO AN IRON PIN; THENCE WESTERLY ONE HUNDRED FORTY-FIVE (145).FEET TO AN IRON PIN ON THE EAST SIDE OF CENTER HILL AVENUE AND THE POINT OF BEGINNING.

SUBJECT TO RESTRICTIONS, RESERVATIONS, EASEMENT, COVENANTS, OIL, GAS OR MINERAL RIGHTS OF RECORD, IF ANY. BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN DEED BOOK 38386, PAGE 295, FULTON COUNTY, GEORGIA RECORDS.

**KNOWN AS: 477 CENTER HILL AVE**

PARCEL: 14-0178-0002-070-8

## **Exhibit B**

### **Payoff Statement**

See attached.



**Statement Date: 09/13/2024**

## FCI Lender Services, Inc.

Toll Free : (800) 931-2424 Hrs : Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)

PO BOX 27370 Anaheim CA 92809-0112 NMLS # 4920 DRE # 01022780

# Demand Loan Payoff

| **Borrower** | Smith and Morgan Money Management Firm, LLC | **Servicer** | FCI Lender Services, Inc. |
|---|---|---|---|
| | Quinton Morgan | | 8180 E Kaiser Blvd, |
| | 2925 The Meadows Way | | Anaheim, CA 92808-2277 |
| | Atlanta, GA 30349 | | 800-931-2424 |
| | Account: R23093847 | | |

> **This Demand Issued by FCI as Loan Servicer hereby Voids All prior Demands In Any Form and Requires the Receiver of this Demand to Call Prior to Payoff to Verify Funds, as Payoff Amounts May Change.**

| | |
|---|---:|
| **Estimated Payoff Date** | **10/1/2024** |
| Loan Maturity Date | 5/1/2024 |
| Interest Paid to Date | 3/1/2024 |
| Next Payment Due Date | 4/1/2024 |
| Unpaid Principal Balance of Loan | $280,000.00 |
| Deferred Unpaid Principal Due | $0.00 |
| Note Interest Rate From Interest Paid To Date | 9.9900 % |
| Current Note Interest Rate (May include Default Interest Rate) | 18.0000 % |
| Note Rate Interest Due from 3/1/2024 to 10/1/2024 | $16,476.68 |
| Default Rate Interest Due from 3/1/2024 to 10/1/2024 (@ 8.0100%) | $13,211.01 |
| Accrued/Unpaid Interest Due (May include Unpaid Default Interest) | $0.00 |
| Deferred Unpaid Interest Due | $0.00 |
| Unpaid Loan Fees | $0.00 |
| Other Payments | $0.00 |
| Late Fees Due from Paid-to-Date | $1,263.45 |
| Late Fees Unpaid/Due from Previous Payments | $1,398.60 |
| Late Fees Unpaid/Due & Deferred from Previous Servicer | $0.00 |
| Unpaid Loan Charges or Advances | $29,535.70 |
| Estimated Payoff Charges from Servicer | $0.00 |
| Suspense Balance | $0.00 |
| Escrow Balance | $0.00 |
| Restricted Funds | $0.00 |
| **Estimated Amount to Fully Pay Off this Loan:** | **$341,885.44** |
| Daily Interest Amount if Paying After: 10/1/2024 | $150.67 |

**PLEASE BE ADVISED THAT THIS DEMAND IS ACCURATE AS OF ISSUANCE DATE BUT IT IS SUBJECT TO CHANGE.** Additional interest, late charges, fees, and costs may be incurred by the Borrower between the Statement Date and the Payoff Date. **ACCORDINGLY, PLEASE CALL (800) 931-2424 ext. 651 TO VERIFY THE PAYOFF AMOUNT PRIOR TO ISSUING PAYMENT.** As required by state law, upon receipt of payment in FULL, FCI will process the release of lien, unless directed otherwise by lender.

**Outstanding Checks:**

**Special Instructions:**

(1) <span style="color:red">Only Certified Funds or Wire Transfer will be accepted for Immediate Payoff.</span>

(2) Please make your disbursement payable to: FCI Lender Services, Inc.

(3) We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.

(4) PLEASE NOTE THIS DEMAND EXPIRES AND BECOMES NULL AND VOID ON 10/01/2024, as follows: (A) for Payment by Wire, at 2:00 p.m. PT; and (B) for Payment by Certified Funds, at 5:00 p.m. PT.

(5) THE DEMAND FEE IS DUE EVEN IF YOUR TRANSACTION IS CANCELLED.

Sincerely,

*Stacey  Talton*

Stacey  Talton
FCI Lender Services, Inc.
800-931-2424 x 651
Fax: 714-282-2429

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Reserve | Impound | Other | Unp. Int. Acc | Late Chg | Unpaid Int Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/01/2024 | 18.0000% [1] | $ 4,280.55 | $ 0.00 | $ 4,280.55 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 642.08 | $ 0.00 | $ 280,000.00 |
| 05/01/2024 | 18.0000% [1] | $ 4,142.47 | $ 0.00 | $ 4,142.47 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 621.37 | $ 0.00 | $ 280,000.00 |
| 06/01/2024 | 18.0000% [1] | $ 4,280.55 | $ 0.00 | $ 4,280.55 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 280,000.00 |
| 07/01/2024 | 18.0000% [1] | $ 4,142.47 | $ 0.00 | $ 4,142.47 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 280,000.00 |
| 08/01/2024 | 18.0000% [1] | $ 4,280.55 | $ 0.00 | $ 4,280.55 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 280,000.00 |
| 09/01/2024 | 18.0000% [1] | $ 4,280.55 | $ 0.00 | $ 4,280.55 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 280,000.00 |
| 10/01/2024 | 18.0000% [1] | $ 4,142.47 | $ 0.00 | $ 4,142.47 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 280,000.00 |
| [4]10/01/2024 | 18.0000% [1] | $ 138.08 | $ 0.00 | $ 138.08 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 280,000.00 |
| | | $ 29,687.69 | $ 0.00 | $ 29,687.69 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,263.45 | | |

[1] Using Default Interest Rate
[2] This transaction was already accomplished by the borrower.
[3] Rounding adjustment to match total payment amount.
[4] Partial Month's Interest
[5] Using Default Interest Rate on Defaulted Payment.

| Itemization of Unpaid Charges | | | | |
|---|---|---|---|---|
| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
| 12/05/2023 | NSF Payment Charge | 0.000% | $7.00 | $0.00 | $7.00 |
| 01/05/2024 | NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 01/19/2024 | Extension Fee-To Investor | 0.000% | $1,400.00 | $0.00 | $1,400.00 |
| 03/07/2024 | NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 04/04/2024 | NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 04/05/2024 | NSF Payment Charge | 0.000% | $25.00 | $0.00 | $25.00 |
| 05/09/2024 | Demand Fee-By Borrower | 0.000% | $30.00 | $0.00 | $30.00 |
| 06/11/2024 | Demand Fee-By Borrower | 0.000% | $30.00 | $0.00 | $30.00 |
| 07/25/2024 | Legal Fees | 0.000% | $1,746.90 | $0.00 | $1,746.90 |
| 09/06/2024 | Appraisal Cost | 0.000% | $450.00 | $0.00 | $450.00 |
| 09/12/2024 | Foreclosure Attorney Fees | 18.000% | $12,141.70 | $119.75 | $12,261.45 |
| 09/12/2024 | Foreclosure Attorney Fees | 18.000% | $13,378.40 | $131.95 | $13,510.35 |
| | | | | | $29,535.70 |

| Property List |
|---|
| 477 Center Hill Ave NW, Atlanta GA 30318 |

## IMPORTANT DISCLOSURES

FCI Lender Services, Inc. ("FCI") is committed to professional and courteous service to our customers. If you have any questions or concerns, please call our Customer Service Department during our regular business hours at (800) 931-2424 ext. 651, Mon - Fri, 8:00 a.m. - 5:00 p.m., PT.

**ALL CONSUMERS: NOTICES OF ERROR AND REQUESTS FOR INFORMATION:** If you believe that there is an error in your account and you would like to submit a notice of error to FCI to resolve the error (Notice of Error); and/or, if you want to submit to FCI a request for documentation or information regarding your mortgage loan account (Information Request), **you must mail your Notice of Error and/or Information Request to the following exclusive address: FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.** We do not accept a Notice of Error or Information Request sent to any other address or submitted to FCI by telephone, fax, or in any other manner, although you can call us if you have any questions about the Notice of Error and/or Information Request process. Your Notice of Error and/or Information Request should include the name of the borrower(s), the mortgage loan account number, and a description of the asserted error and/or the specific information and documentation requested.

**COLORADO CONSUMERS ONLY:** FCI Lender Services, Inc.'s agent in Colorado is located at 1776 S. Jackson Street #900, Denver, CO 80210-3808; PH: (720) 441-0010 option #1.

**MASSACHUSETTS CONSUMERS ONLY: NOTICE OF IMPORTANT RIGHTS**
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**NEW YORK CONSUMERS ONLY:** FCI Lender Services, Inc. ("FCI") is registered with the Superintendent of the New York State Department of Financial Services (NMLS #4920. You may file complaints and obtain further information about FCI by contacting the New York State Department of Financial Services Consumer Assistance Unit at 1-800-342-3736 or by visiting the department's website at www.dfs.ny.gov.

**OREGON CONSUMERS ONLY:** Oregon Rule #441-890-0070 - Borrowers: The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 800-931-2424 ext. 651 or send an email to customerservice@myfci.com. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**PENNSYLVANIA CONSUMERS ONLY:** The lender retains a security interest in your residential real estate whenever the security interest has not been released.

**TEXAS CONSUMERS ONLY:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**MARYLAND HOMEOWNERS ONLY:** The Maryland Department of Housing and Community Development (DHCD) has established and administers the Homeowner Assistance Fund (HAF) to provide financial assistance to eligible Maryland homeowners, who are delinquent on their mortgage payments or other housing costs due to COVID-19 related financial hardships, with the goal of avoiding loss of their residences. If you are interested in learning more or checking your eligibility for assistance, please visit the HAF website and its online application portal at https://homeownerassistance.maryland.gov or call the Applicant Support Line, toll free, at (833) 676-0119.

**IMPORTANT NOTICE: IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

## Exhibit C

**Appraisal**

See attached.

**A.S. Appraisals, LLC**
2081 Kinridge Court, Marietta GA 30062

R23093847
File No. 0024083

# APPRAISAL OF



## LOCATED AT:

477 Center Hill Ave NW
Atlanta, GA 30318-6230

## FOR:

Genesis Capital, LLC, in its capacity as asset manager to Rithm Capital Corp, in its capacity as beneficial owner of the interests in NRZ PASS-THROUGH TRUST XVI-B, as lender
15303 Ventura Blvd, Suite 700
Sherman Oaks, CA 91403

## BORROWER:

Smith and Morgan Money Management Firm, LLC

## AS OF:

08/25/2024

## BY:

Andressa Silva
CR402136

### TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| Borrower: | Smith and Morgan Money Management Firm, LLC | File No.: | 0024083 |
| Property Address: | 477 Center Hill Ave NW | Case No.: | R23093847 |
| City: | Atlanta | State: GA | Zip: 30318-6230 |
| Lender: | See addendum | | |



Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
Invoice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
Letter of Transmittal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
2055_05UAD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
    Addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
Subject Photos (letter) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
Photo Addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
Comps 1,2,3 Photos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
Comps 4,5,6 Photos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
Plat Map . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
Aerial Map . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
Flood Map . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24
Location Map . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25
1004MC 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26
USPAP 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
Appraiser Independence Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28
Appraiser's License . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29
E & O Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

**A.S. Appraisals, LLC**
2081 Kinridge Court, Marietta GA 30062

R23093847
File No. 0024082

08/25/2024

Genesis Capital, LLC,  in its capacity as asset manager to Rithm Capital Corp,

in its capacity as beneficial owner of the interests in NRZ PASS-THROUGH TRUST XVI-B, as lender

15303 Ventura Blvd, Suite 700
Sherman Oaks, CA 91403

File Number:   0024082

Dear Client;

In accordance with your request, I have appraised the real property at:

477 Center Hill Ave NW
Atlanta, GA 30318-6230

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   08/25/2024                is:

**$245,000**
**Two Hundred Fourty Five Thousand and 00/Dollars**

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

Thank you for your business.

Andressa Silva
CR402136
Certified Residential Real Property Appraiser

Asappraiser@gmail.com

Phone: 770-906-2335

R23093847

# Exterior-Only Inspection Residential Appraisal Report

File No. 0024083

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| Property Address 477 Center Hill Ave NW | City Atlanta | State GA | Zip Code 30318-6230 |
|---|---|---|---|

| Borrower Smith and Morgan Money Management Firm, LLC | Owner of Public Record Smith & Morgan Money Management Firm | County Fulton |
|---|---|---|

Legal Description See addenda

| Assessor's Parcel # 14 017800020708 | Tax Year 2024 | R.E. Taxes $ 3,332 |
|---|---|---|

| Neighborhood Name City of Atlanta | Map Reference 14-178 | Census Tract 0083.01 |
|---|---|---|

| Occupant [ ] Owner [X] Tenant [ ] Vacant | Special Assessments $ 0 | [ ] PUD HOA $ 0 | [ ] per year [ ] per month |
|---|---|---|---|

| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | | | |
|---|---|---|---|

| Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Ascertain Market Value | | | |
|---|---|---|---|

| Lender/Client See addendum | Address 15303 Ventura Blvd, Suite 700.Sherman Oaks, CA 91403 | | |
|---|---|---|---|

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). According to MLS services, the property has not been listed or under contracted for sale within the past one year.

**CONTRACT**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

| Contract Price $ | Date of Contract | Is the property seller the owner of public record? [ ] Yes [ ] No | Data Source(s) |
|---|---|---|---|

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | Property Values [ ] Increasing [X] Stable [ ] Declining | | PRICE | AGE | One-Unit | 55 % |
| Built-Up [ ] Over 75% [X] 25-75% [ ] Under 25% | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | $(000) | (yrs) | 2-4 Unit | 2 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | Marketing Time [ ] Under 3 mths [ ] 3-6 mths [X] Over 6 mths | | 110 Low | 0 | Multi-Family | 1 % |
| Neighborhood Boundaries  are North:Perry Blvd / East: Highway 75 / South: Highway 20 / West: Highway 285 | | | | 618 High | 142 | Commercial | 10 % |
| | | | | 240 Pred. | 69 | Other  Addenda | 32 % |

Neighborhood Description   Schools, shopping, recreation, and employment are all within a 25 to 30 minute commute. Several major thoroughfares are accessed near the subject, and connect the area to nearby job and trade centers. Employment in the area appears stable at the present time. Metro Atlanta Area's unemployment rate is in the 4–5% range.

Market Conditions (including support for the above conclusions)   Market conditions in the subject area appear favorable for long term residential funding; interest rates are increasing the past months. Funding tends to be conventional in nature, with periods ranging from 15 to 30 years.

**SITE**

| Dimensions See attached plat or tax map | Area 10846 sf | Shape Rectangular | View N;Res; |
|---|---|---|---|

| Specific Zoning Classification R4 | Zoning Description Single family residential | | |
|---|---|---|---|

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.  Given present zoning and demand, highest and best use is limited to single family residential  units and the present use is the most appropriate use.

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | Street Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | Alley  None | | |

| FEMA Special Flood Hazard Area [ ] Yes [X] No | FEMA Flood Zone X | FEMA Map # 13121C0239F | FEMA Map Date 09/18/2013 |
|---|---|---|---|

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.  Typical utility; there were no adverse easements, encroachments, environmental conditions or land uses noted at the time of the virtual inspection.  The subject does not appear to be located in a Flood Hazard Area.

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property  [ ] Appraisal Files [X] MLS [X] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner
[ ] Other (describe)   Data Source(s) for Gross Living Area Tax Assessors/FMLS

| GENERAL DESCRIPTION | GENERAL DESCRIPTION | Amenities | Car Storage |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [ ] Crawl Space [X] FWA [ ] HWBB | Fireplace(s) # 0 | [ ] None |
| # of Stories 1.0 | [X] Full Basement [ ] Finished [ ] Radiant | WoodStove(s) # 0 | [X] Driveway  # of Cars 1 |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | [ ] Partial Basement [ ] Finished [ ] Other | Patio/Deck None | Driveway Surface Concrete |
| [X] Existing [ ] Proposed [ ] Under Const. | Exterior Walls Brick/Good | Fuel Gas | [ ] Garage  # of Cars 0 |
| Design (Style) Ranch | Roof Surface Asphalt Shingles/Good | [X] Central Air Conditioning | [ ] Carport  # of Cars 0 |
| Year Built 1970 | Gutters & Downspouts yes, yes/ gd | [ ] Individual | [ ] Attached [ ] Detached |
| Effective Age (Yrs) 15 | Window Type Vinyl /Average | [ ] Other None | [ ] Built-in |
| Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [ ] Disposal [ ] Microwave [P] Washer/Dryer [ ] Other (describe) None | | | |

Finished area above grade contains:   6 Rooms   3 Bedrooms   1.1 Bath(s)   1,326 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)   Central HVAC system, energy efficient appliances and insulated windows,doors and walls and ceiling.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).   C4; It seems the house been updated in the last 5 years and footprint enlarged;The subject appears to be well maintained according to the exterior visual inspection.
From the exterior observations the appraiser is assuming the interior of the house is in C4 condition.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.

R23093847

# Exterior-Only Inspection Residential Appraisal Report

File No. 0024083

| | | | |
|---|---|---|---|
| There are | 41 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 129,000 | to $ 399,000 . |
| There are | 56 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 125,000 | to $ 385,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 477 Center Hill Ave NW<br>Atlanta, GA 30318-6230 | 2234 Baker Terrace NW<br>Atlanta, GA 30318-6206 | 2592 Baker Road NW<br>Atlanta, GA 30318-6170 | 397 Collier Ridge Drive NW<br>Atlanta, GA 30318-7342 |
| Proximity to Subject | | 0.23 miles NE | 0.57 miles NW | 0.75 miles SW |
| Sale Price | $ | $ 219,000 | $ 202,000 | $ 240,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 162.95 sq. ft. | $ 134.22 sq. ft. | $ 212.39 sq. ft. |
| Data Source(s) | | FMLS # 7378193;DOM 36 | FMLS # 7359830;DOM 58 | FMLS # 7325636;DOM 28 |
| Verification Source(s) | | Public Records, Realist | Public Records, Realist | Public Records, Realist |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale or Financing<br>Concessions | | ArmLth<br>Cash;0 | | ArmLth<br>Unk;0 | | ArmLth<br>VA;5600 | -5,600 |
| Date of Sale/Time | | s07/24;c06/24 | | s07/24;c06/24 | | s04/24;c03/24 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10846 sf | 9576 sf | 0 | 15504 sf | 0 | 9660 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Ranch | DT1;Bungalow | 0 | DT1;Ranch | | DT1;Ranch | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 54 | 69 | 0 | 69 | 0 | 76 | 0 |
| Condition | C4 | C4 | | C4 | | C3 | -17,000 |
| Above Grade | Total 6 Bdrms. 3 Baths 1.1 | Total 7 Bdrms. 4 Baths 2.0 | -4,500 | Total 6 Bdrms. 3 Baths 1.1 | | Total 6 Bdrms. 3 Baths 2.0 | -4,500 |
| Room Count | | | | | | | |
| Gross Living Area | 1,326 sq. ft. | 1,344 sq. ft. | 0 | 1,505 sq. ft. | -9,800 | 1,130 sq. ft. | 10,800 |
| Basement & Finished<br>Rooms Below Grade | 1040sf0sfwo | 0sf | 18,700 | 0sf | 18,700 | 1130sf0sfwo | 0 |
| Functional Utility | Typical | Typical | | Typical | | Typical | |
| Heating/Cooling | Central HVAC | Central HVAC | | Central HVAC | | Central HVAC | |
| Energy Efficient Items | Windows,ext doors | Windows,ext doors | | Windows,ext doors | | Windows,ext doors | |
| Garage/Carport | 1dw | 1dw | | 1cp | -3,600 | 1cp | -3,600 |
| Porch/Patio/Deck | Cv porch | Cv porch | | Patio | 2,000 | Patio | 2,000 |
| Other amenities | None | None | | None | | None | |
| Other amenities | None | None | | None | | None | |
| Net Adjustment (Total) | | ☒ + ☐ - $ 14,200 | | ☒ + ☐ - $ 7,300 | | ☐ + ☒ - $ 17,900 | |
| Adjusted Sale Price<br>of Comparables | | Net Adj. 6.5%<br>Gross Adj. 10.6% $ 233,200 | | Net Adj. 3.6%<br>Gross Adj. 16.9% $ 209,300 | | Net Adj. -7.5%<br>Gross Adj. 18.1% $ 222,100 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s)   GSCCCA.org, FMLS, GAMLS and Public records

My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data source(s)   GSCCCA.org, FMLS, GAMLS and Public records

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 01/20/2023 | | | 12/01/2023 |
| Price of Prior Sale/Transfer | $10 | | | $0 |
| Data Source(s) | Deed bk # 66593/405 | Realist | PUBLIC RECORDS | Deed bk # 67668-385 |
| Effective Date of Data Source(s) | 08/26/2024 | 09/11/2023 | 08/26/2024 | 08/26/2024 |

Analysis of prior sale or transfer history of the subject property and comparable sales   The most recent transfer of the subject was on 01/20/2023 (quit Claim Deed)  on

what appeared to be a typical transaction between two unrelated parties. Recorded in Fulton County deed book #66593/405.

Please check comparables sales history and transfer above and on the following page.

Summary of Sales Comparison Approach.   See Attached Addendum

Indicated Value by Sales Comparison Approach $ 245,000

| Indicated Value by: Sales Comparison Approach $245,000 | Cost Approach (if developed) $ 308,700 | Income Approach (if developed) $ 0 |
|---|---|---|

The sales approach supports the final estimate of value. Most weight is placed on the sales approach, which represents the buyers and sellers in this particular

region. the cost approach and the income approach were not considered relevant.

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,
☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required
inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   No condition

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  245,000
as of   08/25/2024   , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055   March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 2055   March 2005
Page 2 of 6          2055_05UAD 12182015

A.S. Appraisals, LLC

SALES COMPARISON APPROACH

RECONCILIATION

R23093847

## Exterior-Only Inspection Residential Appraisal Report    File No. 0024083

The insurance provider should provide their own cost approach to value because the insurance cost approach should be significantly higher than the replacement cost.

Construction after a loss may call for added cost before repairs can be made. These may include complete or partial demolition, gutting and/or debris removal to make the site clear and safe for reconstruction. This may vary by location, type of catastrophe, type of construction and the extend of the loss. A building burnt to the ground by fire may require only simple debris removal, while a partial storm damage loss could require more complex gutting, cleanup and removal.

After a loss or demolition, while the excavation and foundations may still exist, the necessity for repair and modification usually discourages re-use. Also, after a few years the neighborhood or character may have changed sufficiently, or building styles or codes may have changed, so that re-use is seldom attempted; when foundation or floor slabs are used again, expenditures must be made for rehabilitation and modification.

The income approach and cost approach are not considered applicable.
Subject is not located in a PUD.
Please see addendum and/or Appraiser's Certifications for additional information.

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     Cost approach is estimated based on the extraordinary assumption that the subject shows typical market depreciation for it's condition. The cost approach is not considered reliable to determine market value and is included as required by the lender. The cost approach is given no weight in the final reconciliation of value.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 115,000 |
|---|---|---|
| Source of cost data National Building Cost Manual 2024 | Dwelling              1,326 Sq. Ft. @ $      168.83 . . . . . . . . . . . = $ | 223,869 |
| Quality rating from cost service  Average     Effective date of cost data  08/2024 | 1040                      Sq. Ft. @ $      24.64 . . . . . . . . . . . = $ | 25,626 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Porches and Extras | 8,739 |
| "As -is" value of Site Improvements includes depreciation to those features. | Garage/Carport  0          Sq. Ft. @ $ . . . . . . . . . . . = $ | 0 |
| The Age -Life method of depreciation assumed in this report includes all | Total Estimate of Cost-New . . . . . . . . . . . = $ | 258,234 |
| elements of depreciation to the Improvements in one calculation shown in the | Less  60   Physical   Functional   External | |
| Physical category. Economic Life - Effective Age = Remaining Economic Life | Depreciation   $64,559 = $ ( | 64,559) |
| | Depreciated Cost of Improvements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 193,675 |
| | "As-is" Value of Site Improvements . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 0 |
| | | 0 |
| Estimated Remaining Economic Life (HUD and VA only)            45 Years | INDICATED VALUE BY COST APPROACH . . . . . . . . . . . . . . . . . . . = $ | 308,700 |

**COST APPROACH**

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $        0.00  X Gross Rent Multiplier        0.00  = $              0  Indicated Value by Income Approach |
|---|

Summary of Income Approach (including support for market rent and GRM)     Single family residential properties are typically not sold based on the income approach to value, therefore, the income approach to value is not deeded credible or appropriate.

**INCOME**

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?      ☐ Yes   ☐ No    Unit type(s)    ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?   ☐ Yes  ☐ No    If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes  ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete?      ☐ Yes  ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?      ☐ Yes  ☐ No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

**PUD INFORMATION**

**A.S. Appraisals, LLC**

R23093847

### Exterior-Only Inspection Residential Appraisal Report

File No. 0024083

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4.   The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**A.S. Appraisals, LLC**

R23093847

### Exterior-Only Inspection Residential Appraisal Report

File No.  0024083

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value.  I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment.  I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value.  I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal.  I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.  I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report.  If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report.  I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

A.S. Appraisals, LLC

R23093847

## Exterior-Only Inspection Residential Appraisal Report

File No. 0024083

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if  a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature _Silva_
Name Andressa Silva
Company Name A.S. Appraisals, LLC
Company Address 2081 Kinridge Court
Marietta, GA 30062
Telephone Number 770-906-2335
Email Address asappraiser@gmail.com
Date of Signature and Report 08/27/2024
Effective Date of Appraisal 08/25/2024
State Certification # CR402136
or State License # _____
or Other (describe) _____  State # _____
State GA
Expiration Date of Certification or License 01/31/2025

ADDRESS OF PROPERTY APPRAISED
477 Center Hill Ave NW
Atlanta, GA 30318-6230

APPRAISED VALUE OF SUBJECT PROPERTY $ 245,000

LENDER/CLIENT
Name AMC: Applied Valuation Services
Company Name See addendum
Company Address 15303 Ventura Blvd, Suite 700
Sherman Oaks, CA 91403
Email Address vendors@applied-valuation.com

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature _____
Name _____
Company Name _____
Company Address _____
_____
Telephone Number _____
Email Address _____
Date of Signature _____
State Certification # _____
or State License # _____
State _____
Expiration Date of Certification or License _____

SUBJECT PROPERTY
☐ Did not inspect exterior subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection _____

Freddie Mac Form 2055  March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 2055 March 2005
Page 6 of 6                                                                                              2055_05UAD 12182015

A.S. Appraisals, LLC

R23093847

## Exterior-Only Inspection Residential Appraisal Report

File No. 0024083

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 477 Center Hill Ave NW | 711 S Grand Avenue NW | | | | | |
| | Atlanta, GA 30318-6230 | Atlanta, GA 30318-6249 | | | | | |
| Proximity to Subject | | 0.42 miles NE | | | | | |
| Sale Price | $ | $ 328,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 224.97 sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | FMLS # 7364827;DOM 81 | | | | | |
| Verification Source(s) | | Public Records, Realist | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | | | | |
| Concessions | | Conv;3000 | -3,000 | | | | |
| Date of Sale/Time | | s07/24;c06/24 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 10846 sf | 7500 sf | 0 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | DT1;Ranch | DT1;Bungalow | 0 | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Actual Age | 54 | 19 | 0 | | | | |
| Condition | C4 | C3 | -17,000 | | | | |
| Above Grade | Total 6 Bdrms. 3 Baths 1.1 | Total 6 Bdrms. 3 Baths 2.0 | 0 | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | | | -4,500 | | | | |
| Gross Living Area | 1,326 sq. ft. | 1,458 sq. ft. | -7,300 | sq. ft. | | sq. ft. | |
| Basement & Finished | 1040sf0sfwo | 0sf | 18,700 | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Typical | Typical | | | | | |
| Heating/Cooling | Central HVAC | Central HVAC | | | | | |
| Energy Efficient Items | Windows,ext doors | Windows,ext doors | | | | | |
| Garage/Carport | 1dw | 1dw | | | | | |
| Porch/Patio/Deck | Cv porch | Cv porch, deck | -1,000 | | | | |
| Other amenities | None | None | | | | | |
| Other amenities | None | None | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | 14,100 | ☐ + ☐ - $ | | ☐ + ☐ - $ | |
| Adjusted Sale Price | | Net Adj. -4.3% | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 15.7% $ | 313,900 | Gross Adj. % $ | | Gross Adj. % $ | |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 01/20/2023 | 03/25/2024 | | |
| Price of Prior Sale/Transfer | $10 | $300,000 | | |
| Data Source(s) | Deed bk # 66593/405 | Deed bk # 67709-588 | | |
| Effective Date of Data Source(s) | 08/26/2024 | 08/27/2024 | | |

Summary of Sales Comparison Approach

RCS Appraisal, LLC

## Uniform Appraisal Dataset Definitions

R23093847
File No.  0024083

### Condition Ratings and Definitions

**C1**    The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**    The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**    The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4**    The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**    The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**    The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

**Q1**    Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**    Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**    Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**    Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**    Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**    Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated**
Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical /functional deterioration.

**Updated**
The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**
Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/ or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following:  replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period.  Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

R23093847

## Uniform Appraisal Dataset Definitions

File No. 0024083

---

### Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| ac | Acres | Area, Site | in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| AdjPrk | Adjacent to Park | Location | Lndfl | Landfill | Location |
| AdjPwr | Adjacent to Power Lines | Location | LtdSght | Limited Sight | View |
| A | Adverse | Location & View | Listing | Listing | Sale or Financing Concessions |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | MR | Mid-Rise Structure | Design(Style) |
| AT | Attached Structure | Design(Style) | Mtn | Mountain View | View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | N | Neutral | Location & View |
| br | Bedroom | Basement & Finished Rooms Below Grade | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| B | Beneficial | Location & View | op | Open | Garage/Carport |
| BsyRd | Busy Road | Location | o | Other | Basement & Finished Rooms Below Grade |
| cp | Carport | Garage/Carport | O | Other | Design(Style) |
| Cash | Cash | Sale or Financing Concessions | Prk | Park View | View |
| CtySky | City View Skyline View | View | Pstrl | Pastoral View | View |
| CtyStr | City Street View | View | PwrLn | Power Lines | View |
| Comm | Commercial Influence | Location | PubTrn | Public Transportation | Location |
| c | Contracted Date | Date of Sale/Time | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Conv | Conventional | Sale or Financing Concessions | Relo | Relocation Sale | Sale or Financing Concessions |
| cv | Covered | Garage/Carport | REO | REO Sale | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | Res | Residential | Location & View |
| DOM | Days On Market | Data Sources | RT | Row or Townhouse | Design(Style) |
| DT | Detached Structure | Design(Style) | RH | Rural Housing - USDA | Sale or Financing Concessions |
| dw | Driveway | Garage/Carport | SD | Semi-detached Structure | Design(Style) |
| Estate | Estate Sale | Sale or Financing Concessions | s | Settlement Date | Date of Sale/Time |
| e | Expiration Date | Date of Sale/Time | Short | Short Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions | sf | Square Feet | Area, Site, Basement |
| g | Garage | Garage/Carport | sqm | Square Meters | Area, Site, Basement |
| ga | Garage - Attached | Garage/Carport | Unk | Unknown | Date of Sale/Time |
| gbi | Garage - Built-in | Garage/Carport | VA | Veterans Administration | Sale or Financing Concessions |
| gd | Garage - Detached | Garage/Carport | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| GR | Garden Structure | Design(Style) | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| GlfCse | Golf Course | Location | WtrFr | Water Frontage | Location |
| Glfvw | Golf Course View | View | Wtr | Water View | View |
| HR | High Rise Structure | Design(Style) | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | Woods | Woods View | View |

---

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| | | | | | |

**ADDENDUM**

| | | |
|---|---|---|
| Borrower: Smith and Morgan Money Management Firm, LLC | | File No.: 0024083 |
| Property Address: 477 Center Hill Ave NW | | Case No.: R23093847 |
| City: Atlanta | State: GA | Zip: 30318-6230 |
| Lender: See addendum | | |

**-** Please address the wide range of Unadjusted Sale Prices ($202,000 - $328,000) and Adjusted Sale Prices ($209,300 - $313,900), which exceed 25% and 15%, respectively.

A thorough search for comparable sales was made in an attempt to find sales which bracket the final opinion of value for the subject property. After consideration of locations, dates of sale, physical differences, and special conditions, in the appraiser's judgment, the comparables used are the best indicators of the subject's value even thought  resulted in a range of about 15% to 25% of unadjusted and adjusted sales price.

- Please address the Opinion of Value reconciled towards the high end of the Adjusted Value Range, being supported only by Comp 4.

The opinion of value is not reconciled towards the high end. High end would be above 300,000. The adjusted range is  209,000 to 313,000. The value is closer to the adjusted range of comparable # 1 and # 3. See below ( last page of the addendum) for the reconciliation weight distribution.

# 1 adjusted sale =  $233,000 = difference of 12,000 to value

# 3 adjusted sale =  $222, 0000 = difference of 23,000 to value

# 4 adjusted sale = 313,000 = difference of 68,000 to value.

- Please analyze the Prior Sale/Transfer for Comps 3 and 4, noting the type of sale/transfer and the reason for any increase/decrease in value, etc.

Comparable # 3 .  It looks like this was a transfer between investors on a Quit Claim Deed

| 12/1/2023 | Re: Co 76 LLC | Mountainview Capital Investments LLC | Quit Claim Deed | 67668/385 |
|---|---|---|---|---|

Comparable # 4 was bought by an investor company ( Open Door) and resold for a profit.

| 3/25/2024 | $299,800 | Opendoor Property Trust 1 | Linda J Pesters Revocable Trust | Trustee's Deed | 67709/588 |
|---|---|---|---|---|---|

- The Opinion of Site Value exceeds 30% of the Opinion of Market Value. Please state whether this is typical for the market.

The high demand for site in Center Hill area  ( Atlanta) coupled with a diminishing supply of vacant lad has resulted in a site values exceeding 30% of the opinion of market value.

**Subject Legal Description:**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT #178 OF THE 14TH DISTRICT, FULTON COUNTY, GEORGIA, AND MORE FULLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE EAST SIDE OF CENTER HILL AVENUE FOUR HUNDRED TWENTY (420) FEET SOUTH AS MEASURED ALONG THE EAST SIDE OF CENTER HILL AVENUE FORM THE SOUTHWEST CORNER OF THE INTERSECTION OF CENTER HILL AVENUE AND BAKER ROAD; RUNNING THENCE SOUTH ALONG THE EAST SIDE OF CENTER HILL AVENUE, SEVENTY- FIVE (75) FEET TO AN IRON PIN; THENCE EASTERLY ONE HUNDRED FORTY-FIVE (145) FEET TO AN IRON PIN; THENCE NORTHERLY SEVENTY-FIVE (75) FEET TO AN IRON PIN; THENCE WESTERLY ONE HUNDRED FORTY-FIVE (145) FEET TO AN IRON PIN ON THE EAST SIDE OF CENTER HILL AVENUE AND THE POINT OF BEGINNING.

**Intended User -** The intended user of this appraisal report is  Genesis Capital, LLC, in its capacity as asset manager to Rithm Capital Corp, in its capacity as beneficial owner of the interests in NRZ PASS-THROUGH TRUST XVI-B, as lender and their assigns. No additional intended users are identified by the appraiser.

The Intended User is Genesis Capital, LLC a Delaware limited liability company.

**Intended Use -** The Intended Use is to evaluate the property that is the subject of this appraisal to Ascertain Market Value, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal reporting form, and definition of Market Value.

**Disclosure of Prior Services -** I have not performed any services regarding the subject property within the three years prior to this assignment and I have no current or prospective interest in the subject property or parties involved.

**Storm Related Damage Comment -**  The subject property has no observable Storm related damages noted from the exterior observations  as of 08/25/2024.

**Predominate Value -** The subject's opinion of value is well supported and within an acceptable range of the neighborhoods' predominate value.

**PUD-HOA Comments -**  The subject and comparables are not located in a PUD community. There are no significant

| | | | |
|---|---|---|---|
| Borrower: Smith and Morgan Money Management Firm, LLC | | | File No.: 0024083 |
| Property Address: 477 Center Hill Ave NW | | | Case No.: R23093847 |
| City: Atlanta | State: GA | | Zip: 30318-6230 |
| Lender: See addendum | | | |

differences between the subject and Comparable locations, neighborhood amenities or marketability.

**Exposure Time -** The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market.
The appraiser has determined that the property would have to be exposed for more than 6 months on the open market in order to have a market value of **$245,000** on the effective date of this appraisal.

**Appraisal Independence -** This appraisal was ordered in compliance with the Appraisal Independence "AIR" and Mortgagee Letter 2009-28.

**Georgia AMC -** This report was completed for Applied Valuation Services a Georgia AMC. Their registration number is 260, the lender's fee for this report is unknown; the appraiser's fee for this report is $225.00.

**Site:** A new survey is recommended to determine and locate any easements, encroachments, verify lot size and confirm flood zone.

**Supplemental State of Georgia Statement -** My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Georgia Real Estate Appraiser Classification and Regulation Act and the Rules and Regulations of the Georgia Real Estate Appraisers Board.

Real Estate Appraisers Classification and Regulation Act, paragraph 539-3.02(1)(m) as amended, August 1, 2006.

**Foreclosures -** GSCCCA.org, FMLS and/or GAMLS report declining foreclosure and short sale activity in the subject's neighborhood, within the past 12 to 24 months. Prices in the subject's neighborhood appear to be trending upward.

**Other Land Uses Includes:** Recreational parks, Industrial parks, Places of worship, Government facilities, K-12 schools, Cemeteries, Green spaces, and Vacant land.

**Comments on Sales Comparison -** Many factors were analyzed in the process of selecting the comparable sales used, such as similarities in size, style, utility and amenities. It was with the consideration of all these factors that the decision was made to use the comparables found in this report. The appraiser searched diligently to find similar comparable sales requiring as few adjustments as possible. While comparable sales that do not need any adjustments are sought, they are seldom found. The integrity of the comparable sales is, however, maintained by the reasonable and appropriate adjustments utilized. All comparables are considered the best available closed sales as of the time of this appraisal report.

**Comment on Adjustments -** The methodology that was used to derive at the adjustments made to this report was extracted from an unbiased, third-party cost data (Solomon Adjustment Calculator) . Furthermore, building categories such as GLA, bath, basement, garage stall and other amenities are developed using the depreciated cost method. Contributory value differs from cost due to depreciation. The contributory value percentage is developed from Effective Age and Economic Life.

**Condition and quality adjustment:** The methodology that was used to derive at the adjustments made to this report was extracted from an unbiased, third-party cost data (Solomon Adjustment Calculator). The Secondary Data Calculator  used for condition and quality adjustment applies percentage adjustments to the market value of comparable properties. Sale price minus concessions is assumed to be market value, because we appraise to a cash equivalent price.
The percentages are derived from surveys of appraisers. Survey methodology is patterned after Wisdom of Crowds. Wisdom of Crowds is the concept that the average of many estimates (30 or more) is more accurate than one expert opinion. This is true when four conditions are met. The estimates need to be independent, decentralized, include diverse points of view, and be aggregated.

Comparable # 3 and 4 has a downward condition adjustment of $17,000.


**Reconciliation -** The market comparison approach is considered the best value indicator, it represents the action of actual sellers and purchasers in an open market.   The income approach was not applicable due to very few properties being rental properties. The majority of the homes in the subjects market area are owner-occupied.

**Environmental Disclaimer -** The value estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substance or detrimental environmental conditions.  The appraiser's routine exterior observation of and inquires of the subject property did not develop any information that would indicate apparent significant hazardous substances, or detrimental conditions which would affect the property negatively.  It is possible that test and inspections made by a qualified hazardous substance and/or environmental expert would reveal the existence or hazardous materials and environmental conditions on or around the subject property that would affect its value.  The appraiser reserves the right to update the appraisal report value analysis if any hazardous substance or detrimental condition were to be found by a qualified expert in that field.

**Comments on digital photography -** The digital images utilized in this report are true and accurate representations of the subject and comparable properties.  These images have not been augmented or altered in any way.


**Comment on FMLS photo -** Comparable #4 had people in front of the property when the appraiser observed it; therefore the appraiser is using FMLS photo. Comparable # 2 is also a FMLS photo.

ADDENDUM

| | | | |
|---|---|---|---|
| Borrower: Smith and Morgan Money Management Firm, LLC | | | File No.: 0024083 |
| Property Address: 477 Center Hill Ave NW | | | Case No.: R23093847 |
| City: Atlanta | State: GA | | Zip: 30318-6230 |
| Lender: See addendum | | | |

**Comments on digital signature -** Signatures in this report were digitalized and have the same power as the original ink signature. Once the digital signature is affixed to this report; the report is considered locked and may not be legally alter by anyone whose name does not appear in the report as the appraiser and at the instruction of the intended user.

**Conclusion -** This electronically transmitted report meets USPAP reporting requirements. Appropriate steps have been taken to protect the data integrity of this transmitted report.

**Comments on Sales Comparison**
A thorough search for comparable sales was made in an attempt to find sales which bracket the final opinion of value for the subject property. After consideration of locations, dates of sale, physical differences, and special conditions, in the appraiser's judgment, the comparables used are the best indicators of the subject's value even thought comparable # 2,3 and 4, gross adjustments exceeds 15% of sales price . All sales have been confirmed closed within the past 4 months and are located within 1 radial mile of the subject. Also, the selected sales are the most similar in: age, style, location, amenities, and substitution. Adjustments were applied for differences in GLA, condition, bathroom count and other dissimilar amenities.

The Indicated Value by Sales Comparison Approach, $245,000, is calculated using the following weights:
  27.6% - 2234 Baker Terrace NW; Sale Price $219,000; Adjusted Value $233,200; Gross Adj: 10.6%
  24.1% - 2592 Baker Road NW; Sale Price $202,000; Adjusted Value $209,300; Gross Adj: 16.9%
  23.5% - 397 Collier Ridge Drive NW; Sale Price $240,000; Adjusted Value $222,100; Gross Adj: 18.1%
  24.8% - 711 S Grand Avenue NW; Sale Price $328,000; Adjusted Value $313,900; Gross Adj: 15.7%

SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Smith and Morgan Money Management Firm, LLC | File No.: 0024083 |
| Property Address: 477 Center Hill Ave NW | Case No.: R23093847 |
| City: Atlanta | State: GA   Zip: 30318-6230 |
| Lender: See addendum | |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: 09/09/2023
Appraised Value: $ 245,000



**STREET SCENE**

| Borrower: Smith and Morgan Money Management Firm, LLC | | File No.: 0024083 |
|---|---|---|
| Property Address: 477 Center Hill Ave NW | | Case No.: R23093847 |
| City: Atlanta | State: GA | Zip: 30318-6230 |
| Lender: See addendum | | |



Opposite street view



Another front view



House number

| | |
|---|---|
| Borrower: Smith and Morgan Money Management Firm, LLC | File No.: 0024083 |
| Property Address: 477 Center Hill Ave NW | Case No.: R23093847 |
| City: Atlanta | State: GA Zip: 30318-6230 |
| Lender: See addendum | |



**COMPARABLE SALE #1**

2234 Baker Terrace NW
Atlanta, GA 30318-6206
Sale Date: s07/24;c06/24
Sale Price: $ 219,000



**COMPARABLE SALE #2**

2592 Baker Road NW
Atlanta, GA 30318-6170
Sale Date: s07/24;c06/24
Sale Price: $ 202,000



**COMPARABLE SALE #3**

397 Collier Ridge Drive NW
Atlanta, GA 30318-7342
Sale Date: s04/24;c03/24
Sale Price: $ 240,000

| Borrower: | Smith and Morgan Money Management Firm, LLC | File No.: | 0024083 |
| Property Address: | 477 Center Hill Ave NW | Case No.: | R23093847 |
| City: | Atlanta | State: GA | Zip: 30318-6230 |
| Lender: | See addendum | | |



**COMPARABLE SALE #4**

711 S Grand Avenue NW
Atlanta, GA 30318-6249
Sale Date: s07/24;c06/24
Sale Price: $ 328,000

**COMPARABLE SALE #5**

Sale Date:
Sale Price: $

**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

PLAT MAP

| Borrower: Smith and Morgan Money Management Firm, LLC | File No.: 0024083 |
|---|---|
| Property Address: 477 Center Hill Ave NW | Case No.: R23093847 |
| City: Atlanta | State: GA | Zip: 30318-6230 |
| Lender: See addendum | | |



**AERIAL MAP**

| Borrower: Smith and Morgan Money Management Firm, LLC | File No.: 0024083 |
|---|---|
| Property Address: 477 Center Hill Ave NW | Case No.: R23093847 |
| City: Atlanta | State: GA | Zip: 30318-6230 |
| Lender: See addendum | |



# FLOOD MAP

| Borrower: Smith and Morgan Money Management Firm, LLC | | File No.: 0024083 | |
|---|---|---|---|
| Property Address: 477 Center Hill Ave NW | | Case No.: R23093847 | |
| City: Atlanta | State: GA | | Zip: 30318-6230 |
| Lender: See addendum | | | |



> Subject
> 477 CENTER HILL AVE NW
> ATLANTA, GA  30318

## FLOOD INFORMATION

Community: City of Atlanta
Property is NOT in a FEMA Special Flood Hazard Area
Map Number: 13121C0239F
Panel: 13121C0239
Zone: X
Map Date: 09-18-2013
FIPS: 13121
Source: FEMA DFIRM

## LEGEND



= FEMA Special Flood Hazard Area – High Risk

= Moderate and Minimal Risk Areas

Road View:

= Forest

= Water

## Sky Flood™

No representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose is implied or provided. Visual scaling factors differ between map layers and are separate from flood zone information at market location. No liability is accepted to any third party for any use or misuse of this flood map or its data.

LOCATION MAP

| | |
|---|---|
| Borrower: Smith and Morgan Money Management Firm, LLC | File No.: 0024083 |
| Property Address: 477 Center Hill Ave NW | Case No.: R23093847 |
| City: Atlanta | State: GA | Zip: 30318-6230 |
| Lender: See addendum | |



R23093847

## Market Conditions Addendum to the Appraisal Report

File No. 0024083

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | | |
|---|---|---|---|
| Property Address 477 Center Hill Ave NW | City Atlanta | State GA | Zip Code 30318-6803 |
| Borrower Smith & Morgan Money Management Firm LLC | | | |

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below: if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 25 | 17 | 14 | Increasing | Stable | X Declining |
| Absorption Rate (Total Sales/Months) | 4.17 | 5.67 | 4.67 | Increasing | X Stable | Declining |
| Total # of Comparable Active Listings | 12 | 23 | 41 | Declining | Stable | X Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 2.90 | 4.10 | 8.80 | Declining | Stable | X Increasing |
| **Median Sale & List Price, DOM, Sale/List %** | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 239,000 | 284,900 | 239,450 | Increasing | X Stable | Declining |
| Median Comparable Sales Days on Market | 32 | 27 | 40 | Increasing | X Stable | Increasing |
| Median Comparable List Price | 255,000 | 299,900 | 299,999 | Increasing | X Stable | Declining |
| Median Comparable Listings Days on Market | 56 | 88 | 40 | Declining | X Stable | Increasing |
| Median Sale Price as % of List Price | 95.64% | 101.79% | 87.09% | Increasing | X Stable | Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | X Yes | No | | Declining | X Stable | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). The typical seller assistance has remained stable over the past months. Typical seller paid closing cost is 1 to 3.5%. The market has absorbed that range as typical; it is atypical when the seller does not participate in the closing cost. The seller's portion of the closing cost has been absorbed in the market and it does not appear to have an adverse effect on value or marketability of the subject.

Are foreclosure sales (REO sales) a factor in the market?  Yes  X No    If yes, explain (including the trends in listings and sales of foreclosed properties).
Short sales and Foreclosures have been steadily stable  over the past 18 to 36 months.

Cite data sources for above information.  The data for this report was taken from GAMLS which is deemed to be a reliable source of information and is typically relied upon local appraisers. Additionally, FMLS was used to assist in this particular analysis. Search area was  within one mile of the subject and one year sales period

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
The data is considered to be reliable and the amount of research to analyze this information is consistent with 'normal course of business' of the local peer group.  The analysis of some portions of this form is limited by the lack of data or research features of the MLS systems.  The accuracy of the data above is solely dependent upon the accuracy and timeliness of the data provided by the users of the MLS systems  As of the effective date, only sold or active status in the gamls system were analyzed. The term neighborhood is defined as a group of complementary land uses: a group of inhabitants, buildings, or business enterprises.  The term comparable in this analysis was used in the context of the principal of competition and the purchasing power of a homogeneous group of buyers relative to the subject property.  The MLS systems lack the ability to analyze home based on size, therefore, the most reliable option was to analyze based on era of construction and purchasing power groups.  In market metrics, it is important to have a sizable sample of properties to measure over periods of time to have a meaningful and reasonable results. The sample sizes used in this analysis are believed to provide as credible results as possible.

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | Project Name: | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | Declining | Stable | Increasing |

Are foreclosure sales (REO sales) a factor in the project?  Yes  No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| **APPRAISER** | **SUPERVISORY APPRAISER (ONLY IF REQUIRED)** |
|---|---|
| Signature _Andressa Silva_ | Signature _____ |
| Name Andressa Silva | Name _____ |
| Company Name A.S. Appraisals, LLC | Company Name _____ |
| Company Address 2081 Kinridge Court | Company Address _____ |
| Marietta, GA 30062 | |
| State License/Certification # CR402136    State GA | State License/Certification # _____  State _____ |
| Email Address asappraiser@gmail.com | Email Address _____ |

AIS Appraisals, LLC

## USPAP ADDENDUM

R23093847

File No. 0024083

| | |
|---|---|
| Borrower: | Smith and Morgan Money Management Firm, LLC |
| Property Address: | 477 Center Hill Ave NW |
| City: Atlanta | County: Fulton     State: GA     Zip Code: 30318-6230 |
| Lender: | Genesis Capital, LLC, in its capacity as asset manager to Rithm Capital Corp, in its capacity as beneficial owner of the interests in NRZ PASS-THROUGH TRUST XVI-B,as lender |

### Reasonable Exposure Time

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: More than 6 months.

The estimated length of time the property being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of an appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. The appraiser has determined that the property would have to be exposed for more than 6 months on the open market.

### Additional Certifications

[x] I have performed **NO** services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

[ ] I **HAVE** performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

### Additional Comments

This assignment is Exterior only. All the observations done by the appraiser were done by the exterior.

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: *Silva* | Signature: |
| Name: Andressa Silva | Name: |
| Date Signed: 08/27/2024 | Date Signed: |
| State Certification #: CR402136 | State Certification #: |
| or State License #: | or State License #: |
| or Other (describe):                State #: | State: |
| State: GA | Expiration Date of Certification or License: |
| Expiration Date of Certification or License: 01/31/2025 | Supervisory Appraiser inspection of Subject Property: |
| Effective Date of Appraisal: 08/25/2024 | [ ] Did Not   [ ] Exterior-only from street   [ ] Interior and Exterior |

A.S. Appraisals, LLC

R23093847

## Appraiser Independence Certification

File No.:    0024083

| | |
|---|---|
| Borrower: | Smith and Morgan Money Management Firm, LLC |
| Property Address: | 477 Center Hill Ave NW |
| City: | Atlanta    County: Fulton    State: GA    Zip Code: 30318-6230 |
| Lender/Client: | Genesis Capital, LLC, in its capacity as asset manager to Rithm Capital Corp, in its capacity as beneficial owner of the interests in NRZ PASS-THROUGH TRUST XVI-B, as lender |

I do hereby certify, I have followed the appraiser independence safeguards in compliance with Appraisal Independence and any applicable state laws I may be required to comply with. This includes but is not limited to the following:

- I am currently licensed and/or certified by the state in which the property to be appraised is located. My license is the appropriate license for the appraisal assignment(s) and is reflected on the appraisal report.

- I certify that there have been no sanctions against me for any reason that would impair my ability to perform appraisals pursuant to the required guidelines.

I assert that no employee, director, officer, or agent of the Lender/Client, or any other third party acting as joint venture partner, independent contractor, appraisal company, appraisal management company, or partner on behalf of the Lender/Client, influenced or attempted to influence the development, reporting, result, or review of the appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner.

I further assert that the Lender/Client has never participated in any of the following prohibited behavior in our business relationship:

1. Withholding or threatening to withhold timely payment or partial payment for the appraisal report;

2. Withholding or threatening to withhold future business, or demoting or terminating, or threatening to demote or terminate my services;

3. Expressly or implicitly promising future business, promotions, or increased compensation for my services;

4. Conditioning the ordering of the appraisal report or the payment of the appraisal fee or salary or bonus on my opinion, conclusion or valuation reached, or on a preliminary value estimate requested;

5. Requesting an estimated, predetermined, or desired valuation in the appraisal report, prior to the completion of the appraisal report, or requesting estimated values or comparable sales at any time prior to the completion of the appraisal report;

6. Providing an anticipated, estimated, encouraged or desired value for the subject property, or a proposed or target amount to be loaned to the Borrower, except that a copy of the sales contract may have been provided if the assignment was for a purchase transaction;

7. Providing stock or other financial or non-financial benefits to me or any entity or person related to me, my appraisal or appraisal management company, if applicable;

8. Any other act or practice that impairs or attempts to impair my independence, objectivity or impartiality, or violates law or regulation, including but not limited to, the Truth in Lending Act (TILA) and Regulation Z, or the Uniform Standards of Professional Appraisal Practice (USPAP).

Additional Comments:   None

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: _(signed)_ | Signature: _____ |
| Name: Andressa Silva | Name: _____ |
| Date Signed: 08/27/2024 | Date Signed: _____ |
| State Certification #: CR402136 | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| or Other (describe): _____ State #: _____ | or State: _____ |
| State: GA | Expiration Date of Certification or License: _____ |
| Expiration Date of Certification or License: 01/31/2025 | |

A.S. Appraisals, LLC

**Appraiser's License**

| Borrower: Smith and Morgan Money Management Firm, LLC | | File No.: 0024083 | |
|---|---|---|---|
| Property Address: 477 Center Hill Ave NW | | Case No.: R23093847 | |
| City: Atlanta | State: GA | | Zip: 30318-6230 |
| Lender: See addendum | | | |

## STATE OF GEORGIA
## REAL ESTATE APPRAISERS BOARD

### ANDRESSA SILVA

### 402136

IS AUTHORIZED TO TRANSACT BUSINESS IN GEORGIA AS A
**CERTIFIED RESIDENTIAL REAL PROPERTY APPRAISER**

THE PRIVILEGE AND RESPONSIBILITIES OF THIS APPRAISER CLASSIFICATION SHALL CONTINUE IN EFFECT AS LONG
AS THE APPRAISER PAYS REQUIRED APPRAISER FEES AND COMPLIES WITH ALL OTHER REQUIREMENTS OF THE
OFFICIAL CODE OF GEORGIA ANNOTATED, CHAPTER 43-39-A. THE APPRAISER IS SOLELY RESPONSIBLE FOR THE
PAYMENT OF ALL FEES ON A TIMELY BASIS.

D. SCOTT MURPHY
Chairperson

JEANMARIE HOLMES
KEITH STONE
WILLIAM A. MURRAY

JEFF A. LAWSON
Vice Chairperson

2024455403510431

ANDRESSA SILVA

| # | 402136 | END OF RENEWAL |
| Status | ACTIVE | 01/31/2025 |

CERTIFIED RESIDENTIAL REAL
PROPERTY APPRAISER

THIS LICENSE EXPIRES IF YOU FAIL TO PAY
RENEWAL FEES OR IF YOU FAIL TO COMPLETE ANY
REQUIRED EDUCATION IN A TIMELY MANNER.

State of Georgia
Real Estate Commission
Suite 1000 - International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303-1605



LYNN DEMPSEY
Real Estate Commissioner

**E & O Insurance**

| Borrower: Smith and Morgan Money Management Firm, LLC | | File No.: 0024083 |
|---|---|---|
| Property Address: 477 Center Hill Ave NW | | Case No.: R23093847 |
| City: Atlanta | State: GA | Zip: 30318-6230 |
| Lender: See addendum | | |

---

## ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
04/30/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: |
|---|---|
| BIBERK P.O. Box 113247 Stamford, CT 06911 | PHONE (A/C, No, Ext): 844-472-0967   FAX (A/C, No): 203-654-3613 |
| | E-MAIL ADDRESS: customerservice@biBERK.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED A.S. Appraisals, LLC 2081 Kinridge Ct Marietta, GA 30062 | INSURER A: National Liability & Fire Insurance Company | 20052 |
| | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

**COVERAGES**   CERTIFICATE NUMBER:   **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PROJECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | ☐ | N/A | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liability (Errors & Omissions); Claims-Made | | | N9PL507477 | 05/06/2024 | 05/06/2025 | Per Occurrence/ Aggregate | $1,000,000/ $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| A.S. Appraisals, LLC 2081 Kinridge Ct Marietta, GA 30062 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE _Katelin Enyart_ |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)   The ACORD name and logo are registered marks of ACORD

## Exhibit D

### Proposed Order

See attached.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| _____ : |  |  |
| In re | : | Chapter 7 |
|  | : |  |
| SMITH AND MORGAN MONEY | : | Case No. 24-60328-lrc |
| MANAGEMENT FIRM, | : |  |
|  | : |  |
| Debtor. | : |  |
| _____ : | _____ |  |
| U.S. BANK NATIONAL ASSOCIATION, | : |  |
| NOT IN ITS INDIVIDUAL CAPACITY | : | CONTESTED MATTER |
| BUT AS TRUSTEE OF THE NRZ PASS- | : |  |
| THROUGH TRUST XVI-B, | : |  |
|  | : |  |
| Movant, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| SMITH AND MORGAN MONEY | : |  |
| MANAGEMENT FIRM, | : |  |
|  | : |  |
| Debtor. | : |  |

**[PROPOSED] ORDER GRANTING MOTION OF U.S. BANK NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT AS
TRUSTEE OF THE NRZ PASS-THROUGH TRUST XVI-B, FOR RELIEF
FROM THE AUTOMATIC STAY**

Upon the _Motion of U.S. Bank National Association, not in its individual capacity but as trustee of the NRZ Pass-Through Trust XVI-B for Relief from the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code_ [Docket No. ●] (the "Motion")[1] filed by Movant on October 23, 2024, seeking entry of an order granting Movant relief from the automatic stay to allow Movant to exercise its contractual and non-bankruptcy rights against certain real and personal property of the Debtor's estate; and the Court having found that it has jurisdiction to consider the Motion and

---

[1] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion.

the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334(b); and the Court having found that venue of this proceeding and Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient, and it appearing that no other or further notice needs to be provided; and the Court having reviewed the Motion and any other papers in support thereof and the responses thereto, if any; and the Court having held a hearing on the Motion or having determined that no hearing was necessary; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing the relief requested in the Motion is in the best interest of the Debtor's estate, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      The automatic stay arising under 11 U.S.C. § 362(a) shall be, and hereby is, terminated effective as of September 30, 2024, pursuant to 11 U.S.C. § 362(d)(1) and (d)(2). As a result of such termination the Foreclosure Sale is deemed valid, effective and complete. For the avoidance of doubt, the Foreclosure Sale shall be considered effective without further action by any person, including Movant. The Movant or its assignee is deemed to be the successful bidder with respect to the Property and the owner of the beneficial interest in the Property.

3.      Movant is hereby granted relief from the automatic stay to record a deed of sale under power effectuating the transfer of title to the Real Property to Movant or its asignee, pursuant to the Loan Documents and in accordance with the outcome of the Foreclosure Sale.

4.    Movant is hereby granted relief from the automatic stay to execute, deliver and perform a bill of sale memorializing and effectuating the transfer of the Personal Property to Movant or its asignee.

5.    Movant is hereby granted relief from the automatic stay to take all other actions and enter into and/or execute all other agreements, resolutions, certificates or documents, which in each case are necessary to consummate the Foreclosure Sale and/or the actions and transactions contemplated by the foregoing paragraphs of this Order.

6.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**[END OF ORDER]**

*Order Prepared and Submitted By:*

*/s/ Gary W. Marsh*
Gary W. Marsh (GA ID NO. 471290)
Pierce E. Rigney (GA ID No. 656946)
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3000
Email: gary.marsh@troutman.com
           pierce.rigney@troutman.com

*Counsel to U.S. Bank National Association, not in its individual capacity but as trustee of the NRZ Pass-Through Trust XVI-B*

303158175v2